You may please the court, and good morning. My name is Ari Rothman, and I'm representing the appellant Hardwire, Inc. Our position is pretty, I think, narrow and clear. The question presented is whether when the district court entered a preliminary injunction that it converted from a temporary restraining order that was granted ex parte exceeded the over as well as the case law that governs the maximum scope of equitable relief that is permissible at the preliminary injunctive stage. I don't think there is a dispute about the Ninth Circuit law, including Lam Weston, that holds that injunctive relief must be narrowly tailored to remedy the specific and redressable harm shown by a plaintiff. I also don't think there's any dispute that the Safe Web Act, which is the statutory basis under or pursuant to which the FTC brought suit, that under that act, that the relief concerning acts or practices must involve foreign commerce that, quote, cause or are likely to cause reasonable foreseeable injury within the United States, close quote, or that, quote, involve material conduct occurring within the United States. When we briefed the preliminary injunction and argued it, we did not contest and do not contest now and do not seek to vacate or change the ruling in any respect that restrains Hardwire from doing anything inside the United States or doing anything that would affect the United States. At the time that the preliminary injunction was ordered and before our client had any notice that the FTC was even looking into it, it was already moving away from the entire United States voluntarily. There are disputed issues of fact as to whether or not that was entirely your client's intent or whether or not your client was actually going to cease any operations in the United States. Did the receiver, excuse me, in the FTC dispute that? The F, well, what the, I'm not sure that there actually was a dispute on that. I think what the receiver said, which was true, was that at the time of the preliminary injunction there was still, we hadn't moved completely out of the United States at that point. There were call centers, there were payment gateways, there were marketing operations. That were still ongoing, that is a true statement. I'm not suggesting that at the time the preliminary injunction order was entered that we were out completely. That would be a completely different argument we'd be making. The point that I'm making is that at the time that the order was entered we had already voluntarily started moving out. It wasn't complete. What the preliminary injunction did was shut it down entirely inside the United States and outside the United States. We're not contesting, although we disagree with the underlying facts and that's for trial. What we're saying is, is what is the appropriate limit for prospective relief between now and trial? If the preliminary injunction said, you can't do business with anybody inside the United States, you can't do business with any of the other co-defendants, you can't do business with any United States consumer, and you cannot do business with any United States vendor, we'd be fine with that. But didn't the commission and the district court have the, wasn't it appropriate for them to be concerned about A, whether your clients were going to do what they said, and B, whether or not these foreign operations were in fact going to cause reasonably foreseeable injury within the United States? Did they have to take your client at its word? No, they don't have to take our client at its word, but their whole case, their whole case is a case of conspirators and a common enterprise with other U.S. defendants, the Triangle defendants, Brian Phillips and others. They also were under a preliminary injunction and they didn't contest any aspect of their conduct. So that would stay there and be in place and we wouldn't be able to touch them in any case. In terms of whether our conduct would, outside the United States, would affect inside the United States, there was no evidence that that was happening or that was going to happen. The FTC's entire complaint and presentation of the evidence solely centered around United States customers. When the FTC and the receiver came in with their preliminary injunction, they took over all of those accounts and all of that data. When we made the argument that said we, that that, and this is also uncontested, that we were not under investigation or anything like that outside the United States, they didn't show any foreign consumers that were concerned, but they've got a receiver, they've got a federal judge who has a preliminary injunction who's overseeing us, they have immediate discovery tools, they have all kinds of enforcement mechanisms to guard against that. And so to go from the conclusion that because something happened in the past, which is now enjoined, that therefore something in the future that they haven't alleged and that isn't a violation will occur, is a leap that wasn't supported by any evidence. But aren't... I'm sorry. Aren't they entitled to enjoin it because once they made the finding or it was likely already that the FTC, it was being violated, that they could then be empowered to enjoin assets necessary to provide the relief in the future? A hundred percent, and we're not contesting that either. Okay. We didn't try to undo the asset freeze or change that in any respect. This is sort of the scenario that we were looking at. If Hardwire right now opened up an office outside of the United States, hired vendors outside of the United States that don't involve any of the receivership entities or the defendants in any way, and engaged in business with foreign consumers where, according to this record, there's no issue about that part of the business, there's no evidence that there were any complaints from foreign consumers, even inside the United States, the conduct that was alleged was very narrow. It related to billing disclosures. It didn't relate to return policies. It didn't relate to provision of products or anything like that. So it was very narrow. So even, even in your view, even if there were a finding that your pre-injunction foreign operations relied on some domestic facilities, your view is that the district court did not have the discretion to say you'd been using domestic facilities for your foreign operations, and so I'm going to enjoin your foreign operations. The district court lacked the discretion to decide that was necessary to protect injury, to prevent injury within the U.S. The district court had the authority to tell us not to do business inside the United States, for sure. The district court that... Right. I understand that's your position, but you're not disputing that prior to the case in part. We are. That's true, but we also are not, we also are disputing that that caused any unlawful conduct or resulted in any unlawful conduct. That was an issue that we were willing to just lay down on and, and assume wasn't an issue for this purpose, because again, we had already been exiting outside the United States, so we didn't care what, what anything happened inside the United States. It just didn't concern us. The issue now that, that, that was concerning and is concerning is, is if we open up an office outside the United States that doesn't touch any consumer inside the United States, that doesn't touch any business inside the, inside the United States, that doesn't involve the United States in any way, that would not be a violation of the Safe Web Act. It would not be a violation of any other part of Section 5 of ROSCA, and it, and, but it would be a violation of the preliminary injunction. Well, then that raises the question, how could a court, a district court enter a preliminary relief that it could not enter on, after a final judgment? Well, if your hypothetical were to occur, you could certainly go in and ask the district court to modify the injunction. That's what we did. Well, we can't do that. We were under an order right now not to do that, and that's the argument we presented to the district judge during the preliminary injunction hearing. He found, because all this conduct happened in the past, that he could enjoin all of it, and he didn't address in his order the argument that I'm making now that I also made below. There is also evidence that you really hadn't changed the structure and scope of the business despite some, I guess, scenery changes, that actually you were still doing, your company, your client was still doing the same business in the United States as it was before. At the time of the injunction, we were still in the United States. We ballparked a cap of 7 percent of our entire business of revenue generation was in the United States at the time that the preliminary injunction was entered. The other 93 percent was outside. We presented evidence below that, in terms of the outside United States, that there were foreign websites, there were foreign consumers, all the money flowed outside the United States, all of that, and we asked for that to be allowed to continue to happen, and the judge, the district court, I mean, said no without any explanation. And so I want to make sure I didn't misunderstand you. Were you saying the district court ordered you not to seek any further amendments to the preliminary injunction? We didn't move for reconsideration after the court entered this order. We figured we would make a minor modification to it between the time the TRO was entered and the time the preliminary injunction was entered to get some relief on the foreign aspect, to allow call centers to continue and so forth, and that was denied. We then made the same argument that I'm making right now in front of the district court, and the district court disagreed with us, entered the preliminary injunction, didn't address our issue. So we made the judgment call that we weren't going to get anything more out of the district court, so that's why we appealed it. Right, but I think Judge Wardlow was asking that you still maintain the ability in the future, even if you were to lose this appeal, to ask the district court, things have changed, you should modify your order. You might not win there, but you have the ability to do that. Sure, we have the ability to do that, but we think that if the law of the case is that the Safe Web Act can reach this kind of foreign conduct in light of the authorities that we have in the Supreme Court case that we cited, Trump versus, well, it's Madsen, I mean there's a couple that we cited, then why, the odds of that happening are likely very low, between now and trial, even though after trial that conduct cannot be enjoined. All right, counsel, you're over your time. Thank you. Good morning, Your Honors. Michelle Arrington for the Federal Trade Commission. May it please the Court. Your Honors, the whole premise of Hardwire's appeal is flawed. It is based on a factual assertion that is counterfactual and entirely speculative. It is counterfactual, and specifically their statement that they were moving outside of the United States, so the district court shouldn't have worried about its activities outside of the United States. It's counterfactual because the evidence, as Your Honors have recognized, showed, and the receiver's report made clear, and the district court cited this in entering the preliminary injunction, that they actually, they were expanding, they were planning to expand the documents, showed their presence in the United States. The only reason that sales in the United States declined the first half of 2018 is because their merchant accounts were being, their shell corporations in the United States were being shut down as people complained about the deceptive and fraudulent practices. And their solution, Hardwire's solution to that, was to rely more heavily on foreign shell accounts and merchant accounts to process sales for United States consumers. So that is a demonstration of them using their overseas instrumentalities and operations to target U.S. consumers. Now the only question before this court is whether the preliminary injunction, based on the facts that were presented in the district court, is supported. And the answer clearly is yes. Counsel, do you agree with, do you agree with your colleague's assertion that the injunction, the district court issued preliminarily that the district court would lack the jurisdiction to enter the same injunction as a permanent injunction if you want after trial? Do you agree with that? Well, that the court would have, if the court saw a continued risk that Hardwire was going to use its overseas operations, based again on the facts presented, that that presented a likelihood of recurrent violations targeting U.S. consumers and affecting U.S. interests. So you disagree depending on the facts presented at trial? It is a factual question. What we have right now is a preliminary injunction based on the facts presented. Facts that are not supported, that do not support Hardwire's contention here. That it was in fact planning to abandon the United States. And on those facts, on the court's entry of a preliminary injunction, that it did, is clearly supported. And these facts are not facts that Hardwire, in this appeal, has really challenged, other than a few comments here or there. It has made no effort to show any clear error in the factual premise underlying the preliminary injunction, which is that it was not in fact, it did not in fact have any wholly overseas operations. It was part of a U.S.-based common enterprise and even apart from the common enterprise, all of its activities, including overseas sales and U.S. sales, were based and rooted in U.S. conduct, material conduct in the United States. And its conduct overseas was injuring or was likely to injure U.S. consumers. Well, what's your response to the argument, I seem to hear today, that Hardwire could structure all of its foreign business in such a way as not to, as to avoid any U.S. impacts? Absolutely. Hardwire could do that. And if it did that, then as your Honor pointed out, it has the opportunity, if it does, to come forward to the district court, either as part of a proceeding to identify the appropriate scope of permanent injunctive relief or on a motion to modify the preliminary injunction and present concrete facts, whether they are things that are going on right now or there are specific plans that it has going forward, to identify and to make clear to the court how it is going forward to do things differently, what instrumentalities it is going to use, so that the court has an assurance and can shape the injunction around concrete facts, not pure speculative hypotheticals, which is all that Hardwire has presented here. Your Honors, the — if you have any other questions, I'm happy to answer it. All right. Let me respectfully request that you affirm the preliminary injunction. All right. Thank you, counsel. I'll give you a minute. Thank you. I would just observe that there seems to have been at the end there a very, I think, positive change in the positioning that we had. Before, at the district court level, the argument was — the FTC argued they didn't have to show foreign conduct, but that the relief that they're seeking now that we're opposing — and this is a quote from the FTC at the hearing — is this, quote, there is an argument to be made that even if everything was located over those acts, has that happened yet? Not that I'm aware of. The relief that they were seeking below that they got was unprecedented and exceeded the scope. And for that reason, and given what — the position that they've taken and the position that we just got, that may be — I mean, the preliminary injunction should be remanded back for that determination, because we can make those showings, and we thought we did, but they just weren't addressed in the preliminary injunction order. So if that's the disconnect, then that's the relief that needs to happen, but the law of the case can't be that we can never do anything overseas that doesn't touch the United States in any way, which is the position that was advanced in trial. Well, counsel, law of the case in an equitable action doesn't prevent you from showing some sort of changed circumstances to change the equitable relief. That's fair, and that's — we — I agree. I have to agree with that. And so if that's where we end up and we have to, you know, go in for round two, then maybe that's where we land on it. But at this point, we didn't see any signals from the FTC — until now, any signals from the FTC or the district court that that was even a remote possibility. I appreciate your time, unless there's any other questions. Yeah. All right. Thank you, counsel. FTC versus Hardwire Interactive is —
judges: Wardlaw, Cardone, Bennett